# In the United States District Court
## for the Southern District of Georgia
### Brunswick Division

| | | |
|---|---|---|
| EAST COAST CONCRETE, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LAFARGE NORTH AMERICA, INC., | : | |
| | : | |
| Defendant. | : | NO. CV204-183 |

### O R D E R

Plaintiff, East Coast Concrete, Inc. ("East Coast"), brought the above-captioned case against Defendant, Lafarge North America, Inc. ("Lafarge"), asserting a breach of contract claim. Lafarge filed a counterclaim for damages for the unpaid balance on East Coast's open commercial account.

Presently before the Court is Lafarge's motion for partial summary judgment on its counterclaim. Because genuine issues of material fact remain in dispute, the motion will be **DENIED**.

## BACKGROUND

Lafarge is a manufacturer and importer of cement, and East Coast produces concrete. During 2003 and 2004, East Coast purchased cement from Lafarge to make concrete.

East Coast alleges that Lafarge breached an oral agreement to supply all of East Coast's cement requirements in 2004 at a price of fifty dollars per ton. According to East Coast, by April 2004, Lafarge refused to supply it with any more cement. As a result, East Coast asserts that it sustained damages during the remainder of 2004 in the form of higher prices for replacement cement, and increased labor, equipment, and fuel expenses. In total, East Coast asserts damages exceeding $495,000 for Lafarge's alleged breach of contract.

To the contrary, Lafarge denies that it made any promise to supply all of East Coast's cement requirements in 2004 at a particular price. Rather, Lafarge maintains that East Coast invented the purported oral agreement as a way to get out of paying the money that East Coast owed it for the cement that Lafarge had already supplied to East Coast during 2004. In Lafarge's counterclaim, it asserts that East Coast owes it

$270,493.19, plus interest accruing at the statutory commercial rate.

Lafarge asserts that this sum is due under two separate account numbers, No. 111-03132819, and No. 110-03132819. According to an affidavit submitted by East Coast's Chief Financial Officer, Robert Kowalczyk, the former account represents, for the most part, the bulk cement sold to East Coast in 2003, while the latter account relates to 2004 purchases. Lafarge maintains that East Coast's unpaid balance is $33,350.19 under the first account, and that East Coast owes $237,143.00 under the second account.

East Coast maintains that it was not offered open terms for payment, and that Lafarge required it to remit payment before any invoice was delivered. East Coast contends that it was required by Lafarge to use the bill of lading to pay for each shipment, multiplying the tons received by the price per ton to determine the actual amount due. According to Kowalczyk, for each check it submitted to Lafarge, East Coast would reference the bill(s) of lading being paid.

On February 24, 2004, Kowalczyk asserts that he prepared a reconciliation of Lafarge's open invoices for Account No. 111-03132819, under which Lafarge claimed it was due

$59,521.61. Because Kowalczyk disagreed with this figure, he sent Lafarge a reconciliation, which he asserts showed that the account was actually overpaid by $8,408.60.

According to East Coast, Lafarge's billing errors resulted from that company's unorthodox and stringent requirement that East Coast submit payment for materials received before it received invoices for the same. As a result, East Coast contends, reconciliation of the many bills of lading with the separate invoice numbers was required.

As a result of this reconciliation from Kowalczyk, Lafarge's Southeast Region Credit Manager, Bonnie Price, undertook a separate audit of the East Coast account. On June 16, 2004, Price determined that a more modest credit of $26,071.42 was due to East Coast for billing errors, instead of the cumulative billing errors suggested by Kowalczyk in the amount of $67,930.21. According to Price's affidavit, Lafarge's invoices demonstrate that $270,493.19 is due from East Coast, and that the $26,171.42 credit has previously been set off from this amount.

On September 20, 2004, in response to Price's conflicting accounting of East Coast's account, Kowalczyk requested copies of any signed, unpaid bills of lading and any other

correspondence that would support Price's determinations, or allow East Coast to determine the amount it owed to Lafarge. On October 5, 2004, and June 13, 2005, Kowalcyzk asserts that he repeated this request, and that East Coast's lawyers have made similar requests during discovery of the instant case. Nonetheless, East Coast avers, Lafarge has not produced any signed bills of lading that remain unpaid.

With respect to the second account number, No. 110-03132819, East Coast acknowledges that there are some charges that remain unpaid by it, but faults Lafarge for not producing the documents that would allow for a complete and fair reconciliation of the account to determine the actual amount due and payable.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts are "material" if they could affect the outcome

of the suit under the governing substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court must view the facts in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in his favor. . .", <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1437 (11th Cir. 1991)(en banc)(internal quotation marks omitted).

## DISCUSSION

For Lafarge to obtain summary judgment on its counterclaim, it must prove that East Coast was indebted to it in "a definite and correct amount." <u>White Stores, Inc. v. Washington</u>, 135 Ga. App. 67, 67 (1971).

While Price has asserted that all proper credits have been provided to East Coast, a genuine issue of material fact remains in dispute regarding this point. According to Kowalczyk, his reconciliation of one of the East Coast accounts shows that Price's accounting overstates East Coast's debt on that one account alone by $41,858.79. Dkt. No. 22, Ex. 2.

AO 72A
(Rev. 8/82)

The factual dispute between the parties regarding which amounts should have been credited to East Coast's account, but were not, is a question of fact for the jury to determine. See, e.g., Andrews v. Adams Drive, Ltd., 142 Ga. App. 32, 33-34 (1977); Kroger Co. v. U.S. Foodservice of Atlanta, Inc., 270 Ga. App. 525, 528-29 (2004).

Additionally, East Coast faults Lafarge for not producing any documents demonstrating the particular amounts due to Lafarge. East Coast also argues that any potential outstanding liability it owes to Lafarge is more than offset by its own damages that it sustained by virtue of Lafarge's refusal to honor the alleged requirements contract. Dkt. No. 22, Ex. 7.

In sum, genuine issues of material fact remain in dispute, and partial summary judgment is not warranted in Lafarge's favor on its counterclaim.

## CONCLUSION

For the reasons explained above, Lafarge's motion for partial summary judgment is **DENIED**. See Dkt. No. 17.

**SO ORDERED**, this _5th_ day of December, 2005.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA